[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This custodial dispute, arising within a dissolution action, involves a plaintiff husband, aged 42, and a defendant wife, aged 35. They married in Meriden, Connecticut, on June 3, 1988, four years ago.
There have been two minor children born issue of the parties: CT Page 7274
 Heather Michelle, born January 7, 1984, aged 8, and Joseph William, born July 8, 1980, aged 12.
Both parents have resided continuously in this state for the past twelve months. Neither is the recipient of public assistance from the State of Connecticut or any governmental subdivision. Each testifies that their marriage has broken down irretrievably.
Atty. Marianne J. Charles represents the plaintiff father.
The defendant mother appears pro se.
Atty. Mark R. Soboslai is counsel for the minor children.
Maria Ragan Decker is the Family Relations Counselor.
FINDINGS: CUSTODIAL
There were three custodial and visitation studies by the Family Relations Office. The first was by Counselor Mary Jenkins. It is now two and a half years old and thus ineligible to provide a basis for this current custodial finding. O'Neill v. O'Neill 13 C.A. 300 (1988). The last two reports, dated June 14, 1991 and July 16, 1992, by Counselor Decker combine to provide a current and useful basis for the court.
The Decker reports, together with the testimony of educators from the children's schools, and with the testimony of each of the parents, form the basis for the finding of this court that it is in the best interests of the two minor children that they remain in the sole custody of their father.
It should be noted by Mrs. South that much of Mr. South's attractiveness to the court lies in the way he has set about recovering from a history that is little different from her own. He has undergone counseling. He has taken parenting courses. As a result, his behavior has changed. He has become more skilled as a parent, more competent as a person. The same changes are available to you, Mrs. South, if you are willing to attend AA and NA meetings and enter counseling and parenting classes. The court urges you to try.
FINDING — CHILD SUPPORT
In a recent decision, Favrow v. Vargas, 222 Conn. 699,715 (1992), our Supreme Court found the current Child Support guidelines "substantially circumscribes the traditionally broad judicial discretion of the (trial) court in matters of child CT Page 7275 support".
The initial Guidelines were introduced gently, with repeated assurances and reassurances that divorcing parties would continue to be protected by the discretion of the court. The trial court would continue to be able to explore the unique facts in each case, and would continue to be able to modify the Guideline recommendations whenever those recommendations would result in orders that were inequitable or inappropriate.
The path to continued judicial discretion has since been narrowed and choreographed.
Section 46b-215b(a) provides that the equitable powers of the court to choose appropriate child support amounts that vary from the guidelines must be accompanied by a "specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case." Additionally, the finding must fall within one of the fourteen deviation established chosen by the Commission.
In this case, father, found to be the appropriate custodian of the minor children, shows a net weekly wage of $401.80 and admits that his home based business also pays many of the family's living expenses, thus effectively expanding his net weekly wage. Mother nets $288 through unemployment compensation. The guidelines project a $129.25 support payment, leaving mother, a brittle, explosive soul, with serious emotional issues, marginal coping skills and an urgent need to undertake a program of varied counseling if she is regain her historic custodial role, with $158.75 a week, a pitiful sum. The court finds that the mechanical application of the guidelines would be inequitable and inappropriate in this case as it would undermine the defendant mother's ability to enter counseling and, thus, regain her custodial role with her children. It therefore falls, the court finds, within Deviation Criteria (N), "other equitable factors."
The court recognizes that the balance available to the defendant mother under the guidelines is $23.75 above $135, "the presumptive permissible ceiling on the noncustodial parent's reserve for living expenses.", Favrow v. Vargas, infra, at 715. It is also $38.31 a week above the July, 1990 poverty level noted by the Commission for Child Support Guidelines at page 4 of its 1991 Guidelines.
The court wonders whether fairness does not dictate that two year old poverty figures of $120.44 a week as, of July, 1990 (1991 Guidelines, p. 4) should be discarded in favor of annual updates in this inflationary economy. It is the poverty figure CT Page 7276 that the Commission uses to establish the "penurious, if not inadequate" (Favrow v. Vargas, supra, at 716) noncustodial parent's self support reserve. If the guidelines are to substantially circumscribe the traditionally broad judicial discretion in matters of child support, they should be promulgated with scrupulous concern for the sensitivity of a court traditionally grounded in equity and fairness. The government's Social Security Bulletin for Spring 1992 reports the poverty level to have increased to $130.96. The impact of child support payments by those with incomes close to the poverty level is particularly severe and cries for careful consideration.
Both the plaintiff father and the children, upon inquiry by the court, agreed that the circumstances in this case supported deviation. Both recommended to the court that the $129.25 guideline figure be rejected in favor of child support payments as low as $50 a week. Father suggested, and the children agreed, that transfer of the family home, though perhaps bereft of equity in today's difficult real estate market, together with mother's assumption of the debts listed in her sworn financial affidavit, was such a "division of property, assets, and debts" as to fall with the Commissions' Deviation Criteria (C).
The court agrees, and again finds the guidelines to be inequitable and inappropriate under the facts in this case, this time for the reasons suggested by those who would gain financially if the guidelines were to be automatically invoked.
ORDERS:
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, the following orders shall enter:
1. DISSOLUTION
This marriage is dissolved on the grounds of irretrievable breakdown.
2. CUSTODY
Plaintiff father shall have sole custody of the minor children.
3. INFORMATION
a. Father shall keep mother informed of all major developments involving the children's health, education and CT Page 7277 welfare.
b. The court notes, and hereby quotes, the provisions of46b-56(e) of the Connecticut General Statutes:
 "A parent not granted custody of a minor child shall not be denied the right of access to the academic, medical, hospital or other health records of such minor child unless otherwise ordered by the court for good cause shown."
This court enters no orders contrary to this right of access and, further, directs plaintiff father to comply with the letter and the spirit of this right.
c. Father shall notify all academic and health providers of mother's name and address and of her rights to their records.
4. ACCESS
A. i. Mother may have access to the children on Sundays from 10am to 7:30pm and on Wednesdays from after school to 7:30pm. During non-school Wednesdays the access may begin at 3:30pm.
ii. On even numbered years mother may spend Easter, July 4th and Thanksgiving with the children. On odd numbered years, mother may spend Memorial Day and Labor Day with the children.
iii. Mother may spend noon Christmas day to noon on December 26th with the children.
iv. Mother's Day and Father's Day shall be spent with the respective parent, as shall each parent's birthday.
v. Mother may spend one week of school vacation time of her choice with the children after a thirty day prior written
vi. The court specifically empowers the parties to vary any portion of the access schedule in any mutually agreeable manner. Any such variation is to be in writing, signed by both parents. Mother is urged not to enter into variations informally, but to protect herself by having approval for the changes in writing, signed by the father.
B. i. The children are to be returned promptly as set forth in Access A, above. If the children are not returned as scheduled, the court would consider it to be a sufficient basis for revising the access schedule. CT Page 7278
ii. Mother shall not go onto school premises unless there is a specific written agreement signed by both parents, which agreement shall be given to the school principal in advance of the day mother intends to go onto the premises. Schools are to be safe places, where parental altercations may not take place.
iii. Mother shall not interfere with any routines established by father with school teachers, school counselors or others school personnel.
iv. Access to either child shall not be exercised in such a way as to interfere with any of the childrens' sporting events, practices or pre-scheduled extracurricular activities.
v. Mother shall not take either child out of state without prior written permission between the parties or an order of the court.
vi. If plaintiff father intends to take either child out of the state, he shall give notice to the mother of the date and time of departure and return, the destination and a phone number where the children can be reached.
vii. The court urges both parents to cooperate fully with any counselors or therapists dealing with the children, whether within the schools or privately retained.
viii. When father intends to use defendant's mother as a child care provider father shall first offer defendant mother the opportunity to provide such care before permitting the maternal grandmother to do so.
5. CHILD SUPPORT
a. The court finds the Child Support Guidelines to be inappropriate and inequitable.
b. The finding is based upon the Commission's Deviation Criteria (C) "the division of property, assets, and debts" and (N) "other equitable factors" as discussed in Finding — Child Support, above.
c. Mother shall pay father child support in the amount of $50 per week by wage attachment, whenever such attachment is available.
d. A prior court ordered that the child support order was to be retroactive to April 16, 1991. Plaintiff father, in his Claims for Relief, asked that an additional amount be paid weekly CT Page 7279 towards that arrearage. This court directs defendant mother to pay an additional $1 each week, creating a weekly child support total of $51.
6. ALIMONY
Neither party shall pay alimony to the other.
7. MEDICAL INSURANCE
a. Father shall maintain medical insurance for the benefit of the minor children.
b. Father shall pay two-thirds, mother shall pay one-third of all unreimbursed medical expenses.
8. LIFE INSURANCE
Both parents shall name the children as irrevocable beneficiaries on all life insurance policies given to them as a benefit of their employment until both minor children attain the age of eighteen or die, whichever first occurs.
9. LIABILITIES
Each parent shall assume full responsibility for each of the debts listed on their respective sworn financial affidavits filed during the current trial and shall indemnify and hold the other harmless therefrom.
10. TAX EXEMPTION
a. Plaintiff father shall be entitled to claim the tax exemptions for each of the minor children.
b. Defendant mother, upon payment of child support for the full tax year, however, may claim one of the children as a tax exemption.
11. REAL PROPERTY
Plaintiff father is to retain title to the family home at 281 Paddock Avenue, Meriden, Connecticut, and is to be solely responsible for all encumbrances of record, all suits, claims and demands by anyone holding or claiming a lien on the premises and shall save defendant mother harmless therefrom.
12. PERSONAL PROPERTY
a. Each party shall keep for their own use any and all CT Page 7280 personal property now within their possession.
b. The sole and limited exception to the exclusivity of personal property extends to some clothing and other personal belonging of mother now held by father in his basement. Mother is to remove those items approved by father within two weeks of this date or permanently forfeit all rights to them.
13. COUNSEL FOR THE MINOR CHILD
a. Attorney Mark R. Soboslai, court appointed Counsel for the minor children, is awarded $7627.25 for his services.
b. Father shall be responsible for two-thirds of those fees. Mother shall be responsible for one-third of those fees.
c. As counsel requested, father shall pay Attorney Soboslai $50 per month towards his share of the fees. Immediately upon achieving employment, mother shall pay Attorney Soboslai $50 a month toward her share of the fees.
14. APPEAL
All of the foregoing orders dealing with custody and access and child support shall stand and operate as interim orders of this court during the pendency of any appeal.
Joseph L. Steinberg, Judge